**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 19 2013, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRADLEY FRANKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1205-CR-256 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1104-FC-29086

**February 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Bradley Franks ("Franks") appeals the trial court's revocation of his probation. We affirm.

## ISSUE

Whether the trial court erroneously ordered Franks to serve the balance of his suspended sentence in the Department of Correction for violating the terms of his probation.

## FACTS

Debbie Brookshire ("Brookshire") is the mother of Thomasina Wallace ("Wallace"). At some point, Franks and Wallace were involved in a romantic relationship. However, their relationship ended. Between March 24 and April 26, 2011, Franks began harassing Brookshire and Wallace. Many of Franks' threats were documented by the Indianapolis Metropolitan Police Department.

One of those incidents occurred on April 26, 2011. Brookshire was sitting on the porch of her home when she received several threatening phone calls from Franks. During those calls, Franks told Brookshire that he could see her, and that he would burn down her house after she went to sleep, killing everyone inside. Brookshire hung up. At approximately 1:30 a.m., Franks called again. When Brookshire answered, Franks described what she was wearing and what she was doing. Brookshire stood up and looked around. When Brookshire saw Franks standing in the shadows across the street, she ran inside and called the police.

As a result, on April 27, 2011, Franks was charged with Count I, stalking as a Class C felony, Count II, intimidation as a Class D felony, and Count III, harassment as a Class B misdemeanor. On April 29, 2011, the trial court held an initial hearing. At that hearing, the trial court also issued an order directing Franks not to have any contact with Brookshire or Wallace. On July 27, 2011, Franks agreed to plead guilty to intimidation as a class D felony. In exchange, the State agreed to dismiss the remaining charges. On August 10, 2011, the trial court sentenced Franks to a three (3) year term, with credit for time served and the remaining 881 days suspended.

On the same day of the sentencing hearing, an order outlining the terms and conditions of probation was filed after the sentencing hearing. Among other things, the trial court ordered Franks to: (1) submit to drug screens when directed; (2) attend domestic violence counseling; (3) attend GED classes; and (4) wear a GPS monitor for the first six months of probation. In addition, Franks was required to have no contact with Brookshire or Wallace while under the trial court's sentence. A copy of the no-contact order was also filed with the trial court, and the relevant portion of the order reads as follows:

1. THE DEFENDANT IS ORDERED TO HAVE NO CONTACT WITH:

Thomasina Wallace, DEBBIE BROOKSHIRE

in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through an attorney of record, while on probation. This includes, but is not limited to, acts of harassment, stalking, intimidation, threats, and physical force of any kind. This provision shall also be in effect during the Defendant's executed sentence.

3

(Appellee's App. 2-3). Franks signed both the conditions of probation and the no-contact order.

Shortly after the sentencing hearing, the trial court was informed by Marion County Community Corrections that Franks had violated the terms of his post-trial release; a warrant was issued for his arrest. On August 15, 2011, Franks was arrested. On August 22, 2011, the Marion County Probation Department ("the Department") filed a Notice of Probation Violation. In its notice, the Department alleged that Franks had failed to report to probation and "failed to maintain his GPS tracking device . . . ." (App. 56). On September 9, 2011, a hearing was held on the allegations, and the trial court placed Franks back on probation.

On September 29, 2011, the trial court was again informed that Franks had violated the terms of his post-trial release. A warrant was issued, and Franks was subsequently arrested. On October 21, 2011, the Department filed another Notice of Probation Violation. The notice alleged that Franks had: (1) failed to submit to a drug screen; (2) missed domestic violence counseling orientation class; and (3) failed to attend a GED class. On November 18, 2011, the trial court held a hearing on the alleged violations. At that hearing, Franks admitted that he had missed his required domestic violence orientation class. The trial court did not impose a sanction, took the matter under advisement, and returned Franks to probation. Franks completed the GPS monitoring portion of his sentence on November 21, 2011.

On February 6, 2012, the Department filed a third Notice of Probation Violation. The notice alleged that Franks had: (1) failed a drug screen; (2) violated the no-contact

4

order; (3) missed domestic violence counseling and GED classes; and (4) failed to make payments as agreed. A warrant was issued, and Franks was arrested on March 24, 2012.

The trial court held an evidentiary hearing concerning the alleged violations on April 27, 2012. At that hearing, Brookshire testified that on February 15, 2012, Franks came to her house and stood outside her kitchen window. Brookshire described him as wearing "[b]lue jeans and a sweatshirt jacket, . . . ." (Tr. 12). In addition, Brookshire stated that Franks had called her and told her: (1) he was going to come to her house; (2) that he had been watching her and could tell her what she had been wearing, (3) that there was nothing the Department could do about it; (4) and that he threatened to kill her.

Franks also testified at the hearing. While Franks denied calling Brookshire, he acknowledged talking to Wallace. That admission is reflected by the following colloquy:

| | |
|---|---|
| DEFENSE COUNSEL: | All right. Thank you. And, um, what about calls from either one of Ms. Wallace or Ms. Brookshire's numbers? |
| FRANKS: | No. |
| DEFENSE COUNSEL: | It wouldn't reflect that Ms. Wallace or Ms. Brookshire has tried to contact you? |
| FRANKS: | Like I have – Sina has called me before. |
| COURT: | You need to talk to me sir, I can't hear you. |
| FRANKS: | Sina has called my grandmother's phone number. |
| DEFENSE COUNSEL: | And when she calls your grandmother's phone number, are you the one that gets on the phone? |
| FRANKS: | Like yeah, I have talked to her, yes. |

5

| | |
|---|---|
| DEFENSE COUNSEL: | Okay. And do [sic] you understand the significance of that? |
| FRANKS: | Yes. |
| DEFENSE COUNSEL: | Okay. |
| DEFENSE COUNSEL: | Judge, I don't think I have any other questions. |
| COURT: | Do you have any other questions, Mr. Johnson? |
| STATE: | I don't think so, Judge. |
| COURT: | All right. Any additional evidence, Mr. Snyder? |
| DEFENSE COUNSEL: | No additional evidence, Judge. |

(Tr. 16).

At the conclusion of the hearing, the trial court found that Franks had violated the terms of his probation. Specifically, the trial court stated:

> Okay. The Court's going to find that Mr. Bradley Franks has violated the terms and conditions of his probation by violating the no-contact order. I found Ms. Brookshire to be very credible, it's clear that she is terrified of him, it's clear that he continues to contact her despite the fact that she's moved. And actually, I believe her when she says he's appeared in person; while there may be some inconsistencies I think he's contacted her so many times it's hard for her to keep it straight. And then, by his own testimony he has admitted that he has talked to her mother – *the Court's taking judicial[notice] of its file*. It is clear that at the initial hearing I issued a no-contact order and then again, at sentencing I issued a no-contact order. I believe Mr. Franks was here on the December allegation of the no-contact order and I believe I let him back out. And he's continued to violate the no-contact order and I clearly believe that the State has proven that by a preponderance of the evidence. He has 881 days back-up, so the Court is going to give him 881 days at the Department of Corrections . . . .

(Tr. 17-18) (emphasis added). Franks now appeals.

## DISCUSSION

6

Franks argues that there is insufficient evidence to support the revocation of his probation. Specifically, Franks argues that the State failed to introduce a copy of the probation order or the no-contact order. Further, Franks asserts that the State failed to introduce any evidence that he was on probation at the time of alleged violation. As a result, there was no basis for the trial court to determine that Franks violated a specific condition of his probation.

> Probation is a matter of grace and a conditional liberty which is a favor, not a right. The trial court determines the conditions of probation and may revoke probation if those conditions are violated. The decision to revoke probation is within the sound discretion of the trial court. And its decision is reviewed on appeal for abuse of discretion. An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. Further, on appeal we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witness. If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation.

*Ripps v. State*, 968 N.E.2d 323 (Ind. Ct. App. 2012) (internal quotations and citations omitted).

We also note that probation revocation hearings are civil in nature, and that the State need only prove the allegations by a preponderance of the evidence. *Smith v. State*, 963 N.E.2d 1110 (Ind. 2012). Further, in civil cases, a judicially noticed fact is taken as conclusively establishing that fact. Ind. Evidence Rule 201(g). A trial court may take judicial notice of the records of a court of this state, whether requested to do so, or not. Evid. R. 201(b)(5), (c). In addition, "[j]udicial notice may be taken at any stage of the

proceeding." Evid. R. 201(g). While, the Rules of Evidence do not apply in probation revocation proceedings, even more flexibility is allowed in the admission of evidence, as long as the evidence is relevant and bears some substantial indicia of reliability. *Christie v. State*, 939 N.E.2d 691 (Ind. Ct. App. 2011); Evid R. 101(c)(2).

In this case, the State presented the testimony of Brookshire. She testified that Franks called her on February 15, 2013. In addition, she testified that Franks appeared at her house, outside her kitchen window. Franks was at least close enough for her to describe his clothing. In addition, Franks acknowledged that he had spoken with Wallace when she apparently called Franks' grandmother's house. Franks' counsel even asked him if he understood "the significance" of his admission, to which he responded, "Yes." (Tr. 16).

Finally, the trial court clearly took judicial notice of the contents of the file in this case. The record reveals that the file contains the plea agreement, sentencing order, probation order (containing the terms of probation), and the no-contact order. These items conclusively establish that Franks: (1) was to have no-contact with either Brookshire or Wallace; and (2) was still on probation at the time of the alleged probation violations. When combined with the testimony introduced at the probation revocation hearing, we find that there was sufficient evidence from which the trial court could find that Franks violated the terms of his probation.

We affirm.

ROBB, C.J., and MAY, J., concur.